# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| WENDI KYLE FLOWERS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | CV-00-PT-0773-M |
| ) | |
| THOMAS EARL BENNETT, et al., ) | |
| ) | |
| Defendant(s). ) | |
| ) | |

## MEMORANDUM OPINION

This cause comes to be heard upon the defendants Thomas Earl Bennett (Bennett) and E. Allison Stevens's (Stevens) Motion for Summary Judgment filed on July 31, 2000.[1]

## FACTS

On April 9, 1998, the plaintiff Wendi Flowers ("plaintiff") and her friend Laura Price were apprehended while attempting to leave a small community that had been destroyed by a recent tornado. A rocking chair was noticeably protruding from the trunk of Price's Mercedes Benz. A local resident had witnessed the plaintiff and Price remove the chair from a storm-damaged funeral home. After law enforcement officers caught the pair, they found marijuana during a consensual search of the Mercedes. The plaintiff and Price were arrested for felony looting and misdemeanor possession of marijuana and were transported and admitted to the St.

---

[1] The plaintiff has acknowledged at pretrial conference that the claims against Stevens are due to be dismissed.

1

Clair County Jail in Pell City.

As part of the booking process, Deputy Lance Bell asked the women a series of medical questions. The plaintiff informed him that she had diabetes and would need to take a dose of insulin that night. Bell noted the information on the plaintiff's booking form, as well as the observation that the plaintiff did not exhibit any abnormal or unusual behavior. Bell explained to the plaintiff that the jail nurse on duty was accustomed to caring for diabetic inmates.

As the plaintiff was being escorted to her cell by correctional officer Judy Whatley, she informed Whatley that she was a diabetic and would need to receive insulin that night. Whatley told the plaintiff that the jail nurse was off duty, but that she would personally do what she could to solve the problem. Whatley recorded the plaintiff's medical condition in an incident report and notified her superior, defendant Jail Captain Tom Bennett, of the plaintiff's condition as well. The content of Whatley's conversation with Bennett is in dispute.[2] Whatley also notified the next shift officer, Lisa Nichols, of the plaintiff's condition.

Later in the evening, Nichols checked the jail refrigerator for insulin to give to the plaintiff. The insulin that the jail possessed was not the kind that the plaintiff could use. Nichols called Bennett to tell him about the lack of useable insulin. Bennett, in turn, called his supervisor, defendant Chief Jailer E.A. Stevens. Stevens told Bennett to have the jailers put the plaintiff on "medical watch" and to summon professional medical assistance if necessary. Bennett then passed Stevens' instructions along to the jail staff. The defendants trusted that Nichols, whom they knew was a certified nursing assistant with EMT training and a good

---

[2] There is a reasonable inference that Whatley told defendant Bennett what was in the incident report.

2

reputation for her diligent care of the inmates, would care for the plaintiff. Nichols had previous experience with diabetics and had observed the signs of diabetic ketoacidosis.

The events of the remainder of the evening are largely in dispute. However, it is undisputed that around 5:30 the next morning, Price summoned the correctional officers to the cell because the plaintiff was complaining about dizziness and shortness of breath, indicating that she was having an "attack." The plaintiff was taken to the hospital.

At the hospital, the plaintiff was diagnosed with having developed diabetic ketoacidosis, a life-threatening condition for diabetics. The hospital's records indicate that the plaintiff had told hospital staff that she had not taken insulin in twenty-four hours[3] and that she had suffered ten attacks of ketoacidosis within the last year. The hospital records also contain medical notes from the hospital's treating physician, Dr. Carl Frosina. The notes state that when the plaintiff's personal physician, Dr. Bell, was consulted about her condition, he informed Dr. Frosina that the plaintiff had been negligent in taking care of her diabetes and had not been to see him in quite some time. Flowers was administered fluids and insulin intravenously and was released from the hospital to the custody of the jail the next day, Saturday, April 11, at which time she made bond and was released.

The plaintiff reports that, since her release, she is weak and has swollen ankles. Thus far, no medical professional has connected these complications with her experience in the jail. The plaintiff's personal physician has testified that any relationship between the plaintiff's night in jail and her weakness and swollen ankles is psychological, and admits that even this conclusion

---

[3] At the time that the plaintiff was admitted to the hospital, she had been in jail only 8-9 hours.

3

is based mostly on speculation.

The jail policy regarding inmates with medical conditions was to maintain a nurse during certain hours at the jail. After hours, the jail nurse, or a nurse at the local hospital would be "on call." In an emergency, the staff was authorized to call the nurse or a rescue squad. While at the jail, an inmate with a medical condition was to be placed on "medical watch," a procedure by which jail staff would observe the inmate frequently to monitor changes in his or her condition. The inmate was allowed to make one or more phone calls as necessary. The jail's medical procedures were originally memorialized in a jail procedure handbook that can no longer be found at the jail. According to the defendants, the handbook disappeared when the prior sheriff left office.

On March 27, 2000, the plaintiff filed a complaint against the defendants under 42 U.S.C. § 1983. Because the complaint was somewhat deficient (the plaintiff had neglected to allege the deprivation of a constitutional right), the plaintiff filed an amendment to the complaint on June 19, 2000, alleging violations of the plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. Specifically, the plaintiff alleged that the defendants had actual knowledge of her condition and behaved with deliberate indifference when they failed to either telephone the on-call nurse, telephone the plaintiff's parents, or take the plaintiff to the hospital to receive insulin.

## DISPUTED FACTS

The first dispute occurs with regard to the conversation between Whatley and Bennett in which Whatley informed Bennett about the plaintiff's medical condition. The substance of their conversation is not well-defined. Bennett claims that Whatley informed him that the plaintiff was a diabetic and needed insulin, but that she had taken a dose at dinnertime, would be fine until

4

morning, and that the jail was following procedure. Whatley herself stated in her deposition that "I explained to [Bennett] that we've got the inmate in, and I was following procedure, which that is the procedure of the jail . . . and explained to him, and he said he would be checking on it as soon as possible." Whatley, depo., p. 25.

After Whatley led the plaintiff to her cell, she filled out an incident report. The report states that as Whatley "padded down (sic)" the plaintiff, the plaintiff informed her that she was a severe diabetic. Defendants' Exhibit 6. Whatley asked when the plaintiff had last taken insulin, and the plaintiff "told [her] she took a shot at supper." The plaintiff also informed Whatley that "she was on different types of insulin, and if she didn't take another shot at bedtime and before breakfast in [the morning], she would probably go into a diabetic coma because of the diabetic she was." Id. Whatley then records in the incident report that she called defendant Bennett and informed Lisa Nichols. Id. The plaintiff argues that, taking into account the information that the plaintiff claims she related to Whatley about her condition, a reasonable juror could infer that Whatley's "explanation" of the situation to Bennett included information that the plaintiff needed insulin that very evening or she would go into a diabetic coma.

The next disputed facts relate to Nichols' interaction with the plaintiff the evening that the plaintiff was admitted to the jail. First, Nichols claims that she offered to give the plaintiff the insulin that was in the jail refrigerator, but that the plaintiff had refused, saying that it was the wrong kind of insulin for her type of diabetes.[4] Nichols depo., 21-22, 24, 50. The plaintiff's physician testified that any type of insulin would have been beneficial to the plaintiff. Bell,

---

[4] Although Nichols actually recorded in the jail log that there was no insulin, she explained in her deposition that the notation referred to the fact that the jail had no insulin that Flowers could use.

5

depo., p. 98. The plaintiff denies that she was offered any insulin while at the jail. Flowers, depo., p. 187-188.

Next, the plaintiff claims that Nichols refused to let her use the phone to call someone to bring her insulin. Flowers, depo., p. 179-180. The plaintiff claims that she was denied the opportunity to make any phone calls at all. Id. In direct contrast, Nichols stated in her deposition that, <u>according to jail policy</u>, she had offered to let the plaintiff call her parents to bring her insulin, but that the plaintiff had refused, saying that she was too embarrassed. Nichols depo., p. 23-24.

It is undisputed that defendant Bennett called defendant Stevens to inform him that the jail was housing a diabetic inmate.[5] The disputed fact is, again, the amount and specificity of the information that defendant Bennett related to defendant Stevens. Defendant Bennett claims that he related to defendant Stevens the same information that he claims Whatley gave to him: that the plaintiff was a diabetic, had taken insulin around dinnertime, and would probably be fine until the morning. Bennett, depo., p. 15. Because defendant Stevens cannot remember the conversation's taking place at all, he cannot recall what defendant Bennett said to him. The plaintiff argues that it should be inferred that defendant Bennett told defendant Stevens that the plaintiff would go into a diabetic coma if she did not receive insulin at bedtime, on the grounds that if it can be inferred that Whatley gave Bennett this vital information, it can be inferred that Bennett passed it along to his superior.

## ARGUMENT

---

[5] Defendant Stevens can no longer "recall" this particular phone call, but he does not dispute defendant Bennett's statement in his deposition that he called Stevens. Stevens, depo., 24-46.

The plaintiff is suing defendant Bennett, Captain of the Pell City Jail, and E.A. Stevens, Chief Jailer over the St. Clair County Jails, for deliberate indifference to serious medical needs. In their motion for summary judgment, the defendants make two arguments: that the plaintiff cannot prove deliberate indifference as a matter of law and that the defendants are, at any rate, entitled to qualified immunity.

**Deliberate indifference as a matter of law**

The defendants argue that their conduct does not rise to the level of deliberate indifference. In the Eleventh Circuit, in order to establish deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). The defendants claim that a defendant must be aware of an *excessive* risk of serious harm in order to be held liable for deliberate indifference. The defendants argue that they are entitled to summary judgment because the plaintiff cannot show that, at the time that they decided to place the plaintiff on medical watch, they were subjectively aware of an excessive risk of serious harm if the plaintiff did not receive insulin before the next morning.

The defendants point to their testimony of what they were told by jail staff that night. Defendant Bennett claims to have been told that the plaintiff would probably be fine until morning. The defendants argue that Bennett's testimony is corroborated by the testimony of Whatley, who did not describe in detail what she "explained" to defendant Bennett, but merely testified that she "explained" that procedure was being followed. The defendants also argue that defendant Stevens lacked this subjective knowledge as well, because when defendant Bennett contacted him to notify him of the situation, defendant Bennett was unaware of such a risk.

7

The plaintiff argues that at this stage in the litigation, all reasonable inferences are to be drawn in her favor. She maintains that it is reasonable to infer that Whatley would have informed defendant Bennett specifically that the plaintiff would go into a diabetic coma if she did not receive insulin at bedtime, because Whatley specifically included this information in the incident report. She also contends that if it is reasonable to infer that defendant Bennett possessed the information that the defendant would be at risk if she did not receive her insulin, it is reasonable to infer that defendant Bennett shared this information with defendant Stevens. The plaintiff asserts that it is also reasonable to infer that Lisa Nichols told defendant Bennett about the seriousness of the plaintiff's condition during their phone conversation about the unuseable insulin.

The defendants claim that this information is not sufficient to show that the defendants knew that the plaintiff was at risk of serious harm. The defendants add that the evidentiary proof is especially attenuated with regard to defendant Stevens. According to the defendants, they took the appropriate precautions in light of the information that had been given to them. They have cited cases in which the government defendants were exonerated from claims of deliberate indifference because of a lack of knowledge of the asserted serious needs or a lack of knowledge of circumstances that clearly indicated the existence of such needs. The defendants also remind the court that if the evidence does not show that they were deliberately indifferent to the plaintiff's medical needs, even if the evidence shows that a member of the jail staff *was* deliberately indifferent, they cannot be held liable for that person's actions. Respondeat superior liability is not available to a plaintiff to hold a government official liable for the actions of one of his subordinates under § 1983. Monell v. Department of Social Servs., 436 U.S. 658, 691

(1978).

**Qualified Immunity**

The defendants next argue that they are entitled to qualified immunity because their conduct did not violate a clearly established law. Public officials, including correctional officers, are protected from actions brought against them in their individual capacities by qualified immunity if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc). Unless the conduct that forms the basis for the suit violates clearly established federal constitutional rights of which a reasonable person would have known *at the time that the alleged actions took place*, the official will be protected not only from liability, but also from the lawsuit itself. Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999). "For a right to be clearly established, previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate the law." Id., citing Anderson v. Creighton, 482 U.S. 635, 640, 107 S. Ct. 30304 (1987); GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).

The defendants argue that the plaintiff cannot show that prior case law has sufficiently defined the alleged unconstitutionality of the defendants' actions. The defendants point to Lancaster v. Monroe County, 116 F.3d 1419 (11th Cir. 1997) as an example of a case in which the plaintiff demonstrated that the law was clearly established. In Lancaster, the plaintiff was able to point to cases from both the Eleventh Circuit and the former Fifth Circuit that clearly stated that acute alcohol withdrawal syndrome was a serious medical condition and that refusal to obtain immediate treatment for an inmate with this condition amounted to deliberate indifference

9

when the government actor knew that the plaintiff was suffering from it. Id. at 1425-1426. Referring to those cases, the Lancaster court noted that they "placed the defendants on notice of the seriousness of acute alcohol withdrawal syndrome and the need to obtain medical treatment for an inmate suffering from that condition." Id. at 1426. The court eventually found that the defendants were not entitled to qualified immunity. Id. at 1427. The defendants assert that, unlike the cases in Lancaster, there existed no materially similar case law on April 9, 1998 that would have placed the defendants "on notice" that diabetes is a "serious medical condition" and that a jail supervisor's failure to provide emergency treatment for a diabetic inmate when an emergency is not manifest demonstrates deliberate indifference.

The plaintiff contends that the law need not be established to the level of clarity that the defendants suggest. According to the plaintiff, instead of damaging her argument against qualified immunity, Lancaster supports it. The plaintiff argues that the Lancaster holding generally states that where the jailer is warned of the high risk of a medical consequence to the inmate's not receiving medication, but allows the medical consequence to occur by failing to provide the medication, his conduct rises to the level of deliberate indifference. The plaintiff also cites to Aldridge v. Montgomery, 753 F.2d 970, 972-973 (11th Cir. 1985), in which the Eleventh Circuit held that the failure to administer physician-prescribed medication to a prisoner demonstrates deliberate indifference to the prisoner's rights. The plaintiff provides a citation to Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985), in which the court stated that if necessary medical treatment was delayed for non-medical reasons, "a case of deliberate indifference has been made out." citing Archer v. Dutcher, 733 F.2d 14, 17 (2d Cir. 1984).

10

The plaintiff argues that case law does not have to clearly establish that the particular illness, in this case, diabetes, is a serious medical need. The plaintiff cites to Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994) for the proposition that the number of serious medical needs is too large to be cataloged. Instead, the plaintiff claims that Hill holds that a serious medical need for the purposes of deliberate indifference is one for which a physician has diagnosed treatment or one so obvious that even a lay person would recognize the necessity of a physician's attention. Id. at 1187. The plaintiff notes that in Hill, the illness from which the plaintiff suffered was found to be a serious medical concern, even in the absence of prior case law. The plaintiff maintains that Hill, Aldridge, Ancata, and Anderson v. City of Atlanta, 778 F.2d 678 (11th Cir. 1985) clearly establish that a jailer cannot deny an inmate previously prescribed medical treatment for non-medical reasons. The plaintiff refers the court once again to Lancaster, in which the defendants were stripped of their qualified immunity because they knew that the plaintiff had an urgent medical need that would be exacerbated by delaying the treatment, but delayed the treatment anyway. 116 F.3d at 1427-1428.

## ANALYSIS

A motion for summary judgment is to be granted if there is no genuine issue of material fact. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The evidence of the non-moving party is to be believed, and the court is not to attempt to perform jury functions such as credibility determinations. Id. After considering everything in the record, all permissible inferences are to be drawn in favor of the non-moving party. Clinkscales v. Chevron USA, Inc., 831 F.2d 1565, 1570 (11th Cir. 1987).

11

When the non-moving party has the burden of proof at trial, it must come forward with sufficient evidence on each element that must be proved. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be proper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). Summary judgment is appropriate if on any element there would be insufficient evidence to require submission of the case to a jury. Earley, 907 F.2d at 1080. "The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 327 106 S. Ct. 2548, 2555 (1986).

## CONCLUSIONS OF THE COURT

There is no area of the law which is more confusing than qualified immunity, unless it is that of deliberate indifference. Here, we have both.

Viewed from the plaintiff's perspective, Whatley told defendant Bennett the following:

1. Flowers was booked at 9:59 P.M.
2. Flowers told Whatley that she was a severe diabetic, had taken an insulin shot at supper, and needed to take a different type of insulin shot at bedtime and before breakfast the following morning.
3. Flowers said that if she didn't have the shots she would probably go into a diabetic coma.

Apparently, Bennett instructed Nichols to watch the plaintiff and stated that he would call

12

the nurse early in the morning if needed.

There are two issues here: (1) Did Bennett have a constitutional obligation under the Fourteenth Amendment to ensure that Flowers got appropriate insulin at bedtime and before breakfast? (2) If he had such a duty, was the law "clearly established" that he had the duty?

This court is of the opinion that the case is controlled by <u>Aldridge v. Montgomery</u>, 753 F.2d 970 (11th Cir. 1985); <u>see also</u> <u>Marsh v. Butler County,</u> _F.3d_, 2000 WL 1269769 (11th Cir. September 7, 2000). If someone needs to take different types of insulin, there is certainly a reasonable inference that it would have been prescribed as part of medical treatment. There may be conflicts in the evidence as to what Bennett knew, what action he did or did not take, what Flowers was offered and what she declined. If, however, the facts are that Bennett was told that Flowers was a severe diabetic who could go into a coma if she didn't receive insulin, he was arguably deliberately indifferent. If the plaintiff was given the opportunity to secure the insulin from her parents and failed to do so, there would likely, in any event, be no causation. The court concludes that this is one of those cases where there are factual disputes as to both the constitutional deprivation issue and the qualified immunity issue.[6] The motion will be denied as to defendant Bennett.

This 17th day of October 2000

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[6] In some cases, certain factual disputes involving even qualified immunity have to be submitted to the jury.

13