# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

WENDI KYLE FLOWERS,                )
                                    )
    Plaintiff(s),               )
                                    )
vs.                                 )       **CV-00-PT-0773-M**
                                    )
THOMAS EARL BENNETT, et al.,        )
                                    )
    Defendant(s).               )
                                    )

**ENTERED**

DEC 1 1 2000

## MEMORANDUM OPINION

This cause comes to be heard upon the defendant, Thomas Earl Bennett's ("defendant")

motion to Alter, Amend, or Vacate this court's prior Memorandum Opinion of October 17, 2000,

filed October 31, 2000.

## FACTS

To conserve time and space, this court incorporates by reference its statement of the facts

contained in its Memorandum Opinion of October 17, 2000.

## PROCEDURAL HISTORY

This court issued its October 17 Memorandum Opinion in response to the defendant's

motion for summary judgment, filed July 31, 2000.  In the Memorandum Opinion and the

contemporaneously filed Order, this court denied the defendant's motion for summary judgment

because it found that genuine issues of material fact existed as to whether the defendant's

conduct constituted deliberate indifference to a serious medical need.

On October 31, 2000, the defendant filed the instant motion to alter, amend, or vacate the

1

October 17 Memorandum Opinion and Order in light of the Eleventh Circuit's recent decision in

Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).  The defendant argues that the evidence that

the plaintiff has presented does not rise to the standard of deliberate indifference articulated in

Taylor.  The defendant quotes for the court the portion of Taylor in which, he argues, the

Eleventh Circuit articulated a more recent, more rigorous standard:

> "First, there must be, objectively speaking, conduct by public officials
> "sufficiently serious" to constitute a cruel or unusual deprivation– one "denying
> 'the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 510 U.S.
> 294, 298, 111 S. Ct. 2321, 2324 (1991) (quoting Rhodes v. Chapman, 452 U.S.
> 337, 347, 101 S. Ct. 2392, 2399 (1981)).  Second, there must be a subjective
> intent by the public officials involved to use the sufficiently serious deprivation in
> order to punish.  See Id. at 300, 111 S. Ct. at 2325."

221 F.3d at 1257.  Later in the opinion, the court stated that a defendant's response to a medical

need must be "poor enough to constitute 'unnecessary and wanton infliction of pain,' and not

merely accidental inadequacy" for the defendant to be found to have been deliberately

indifferent.  Id.  The defendant argues that because, in light of the Eleventh Circuit's newest

articulation of the deliberate indifference standard, the plaintiff's evidence is clearly insufficient,

this court should amend or vacate its prior opinion and award summary judgment to him.

Specifically, the defendant argues that the plaintiff's evidence shows only that the defendant

made a poor decision that does not rise to the level of a denial of a measure of life's necessities

with the intent to punish.

Finally, the defendant argues that he is entitled to qualified immunity because "[t]here

are no cases which hold that every arrestee who asks for immediate medical care should be given

it." According to the defendant, the applicable case law does not truly compel the conclusion for

every like-minded jail captain that placing the plaintiff on medical watch instead of providing

her with insulin violates the law, citing Lassiter v. Alabama A&M University, 28 F.3d 1146,

2

1150 (11th Cir. 1994). The defendant maintains that "the law leaves room for a supervising jail official to take a wait and see attitude . . . to get medical care as the situation calls for it."

This court issued an order on November 7, 2000, directing the plaintiff to respond to the motion by either presenting evidence that met the standard expressed in <u>Taylor</u> or providing a reason that <u>Taylor</u> does not state the applicable law. The plaintiff responded on November 17, 2000, by arguing that the quotations from <u>Taylor</u> that the defendant presented to the court did not articulate the specific standard to be applied, but instead were statements of historical background information used to show how the elements of deliberate indifference were refined by later cases. The plaintiff cites to a subsequent portion of <u>Taylor</u>, in which the court stated that

> "[t]o show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' which in turn is defined as requiring two separate things: 'aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exist [sic] and . . . draw[ing of] the inference."

221 F.3d 1258 (internal citations omitted). The plaintiff argues that the difference in the <u>Taylor</u> court's articulations of the standard and the applicable standard in this case lies in the differences between the types of defendants to whom they were applied. The plaintiff claims that the "subjective intent to punish" standard is applied in cases where medical personnel are involved and that the standard set forth in <u>McElligott v. Foby</u> applies in the case of non-medical officials. The standard articulated in <u>McElligott</u> is the framework in which this court analyzed the plaintiff's case in the October 17 Memorandum Opinion: (1) subjective knowledge of a risk of serious medical harm; (2) disregard of that risk; (3) by conduct that is more than mere

negligence.[1]  182 F.3d 1248, 1255 (11th Cir. 1999).  The plaintiff contends that, as in this case,

where the defendant is a non-medical person, the plaintiff can show subjective intent to punish

by presenting evidence that the defendant disregarded a serious medical risk by conduct that was

more than negligent, citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994).

The defendant, in his reply to the plaintiff's arguments, maintains that the evidence

presented by the plaintiff does not show an "intent to punish," which, according to the defendant,

is the current incarnation of deliberate indifference case law.  The defendant argues that the

plaintiff has not sufficiently distinguished Taylor to the point that it can be deemed inapplicable

to this case.  The defendant contends that, assuming that Officer Whatley told Bennett

everything that she wrote in the incident report, "Bennett was never told that Flowers *would* go

into a coma, only that Flowers *told the jailer* she would go into a coma by morning without

insulin."[2]  The defendant suggests that, even if he had been informed that the plaintiff had

claimed that she would fall into a coma by the morning without insulin, delaying the provision of

insulin was reasonable because, in the context of a jail situation, "those charged with crimes are

often given to exaggeration, especially if it means getting out of jail."[3]  The defendant also

argues that placing the plaintiff on medical watch does not amount to taking no action at all, but

---

[1]  In determining the point at which the conduct must lie along the spectrum between intent to harm and mere negligence, both the Eleventh Circuit and the Supreme Court have indicated that conduct amounting to recklessness, defined as the conscious disregard of a substantial risk of harm of which the defendant is aware, satisfies the fourth requirement.  Farmer v. Brennan, 511 U.S. 825, 839, 114 S. Ct. 1970, 1980 (1994); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

[2]  The court assumes that the defendant is arguing that the prediction of a medical consequence is less reliable when it originates from a non-medical source.  However, in Lancaster v. Monroe County, 116 F.3d 1419, 1422 (11th Cir. 1997), the warnings of impending medical consequences for which the Eleventh Circuit held the jailers accountable came from the detainee's wife and father, not from a physician or nurse.

[3]  The defendant does not cite to authority for this presumption.  The court doubts that it states a legal proposition.

4

instead, constitutes a reasonable decision in light of his knowledge that officer Nichols, who had received some medical training, would be at the jail that night "to take care of problems . . . as they arose."[4] The defendant acknowledges that, in hindsight, he perhaps should have been more wary of allowing the plaintiff to spend the night without insulin. However, he argues that "the qualified immunity doctrine means that government agents are not always required to err on the side of caution," citing Lassiter, 28 F.3d at 1149. Furthermore, the defendant compares himself to the nurse in Taylor, whom the Eleventh Circuit held to be entitled to qualified immunity from the charges of deliberate indifference because she took some action, even though the action was too little, too late. 231 F.3d at 1259. The defendant concludes by arguing that taking reasonable action, even if more could have been done, does not rise to the level of "denying the minimal civilized measure of life's necessities" and does not demonstrate an "intent to punish."

## ANALYSIS

In Taylor v. Adams, the Eleventh Circuit reversed the district court's denial of qualified immunity to three fire medics and a nurse sued in their individual capacities for the death of a pretrial detainee. 221 F.3d at 1262. In reversing the denial of qualified immunity, the court found that the plaintiff had not alleged the deprivation of a constitutional right. Id. at 1257.[5] To arrive at the conclusion that the plaintiff had not alleged that he was deprived of a constitutional right, the court analyzed the requirements of proving a deliberate indifference claim.

First, the court stated that "there must be, objectively speaking, conduct by public

---

[4] By making this argument, the defendant implies that medical consequences that are probably imminent become "problems" only when they become manifest, even when such medical consequences are preventable.

[5] In a qualified immunity analysis, two questions arise: (1) Does the plaintiff allege the deprivation of a constitutional right; and (2) Was the law that the public official is alleged to have violated clearly established at the time of the incident giving rise to the suit. Id. at 1257. If either question is answered in the negative, the defendant is entitled to qualified immunity and summary judgment is proper. Id.

5

officials "sufficiently serious" to constitute . . . 'denying the minimal civilized measure of life's necessities.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)). Then, the court imposed a requirement of "subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Id.

However, the court did not stop there. "In the context applicable here, denial of medical care, each of these minima has been more specifically described as encompassing two subsidiary requirements." Id. The court then went on to specify what a plaintiff must prove in order to show a sufficiently serious deprivation made with the subjective intent to punish. Id. at 1258. "To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively serious medical need . . . that, if left unattended, 'poses a substantial risk of serious harm,'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)). Next, the plaintiff must show that "the response made by public officials to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligence in diagnosis or treatment,' or even 'medical malpractice' actionable under state law." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 105-106, 97 S. Ct. 285, 291-292 (1976)). Next, the court addressed the requirements for a plaintiff to show a subjective intent to punish: "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" Id. (quoting Estelle, 429 U.S. at 105, 97 S. Ct. at 291). A plaintiff demonstrates deliberate indifference by showing two things: (1) "awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the "drawing of the inference." Id. (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). The court summed up the requirements as follows: "Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need,

6

subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Id. In so many words, to demonstrate the deprivation of one of life's necessities with the intent to punish, a plaintiff must show knowledge of a serious medical risk and a disregard of that risk by conduct that is more than mere negligence. Id.; McElligot, 182 F.3d 1255. This court notes that the language "denial of a measure of life's necessities with the intent to punish" is somewhat ambiguous and could arguably allow for only the most extreme situations; for example, a situation in which an inmate has an appendicitis attack in his cell and notifies the guards only to have them laugh at him and walk away in order to punish him. It seems that the courts have developed the four sub-part tests to lend specificity to the kinds of cases that qualify as deliberate indifference, but that fall short of this extreme.

Contrary to the defendant's argument, Taylor does not create a newer, more stringent standard for deliberate indifference. And contrary to the plaintiff's argument, the standard in Taylor and its ancestry applies across the board to all defendants regardless of whether their job descriptions include medical or non-medical activities. Current Eleventh Circuit precedent does not distinguish between medical and non-medical personnel with regard to application of the deliberate indifference standard. [6]

Taylor is consistent with the prior Supreme Court deliberate indifference law upon which it relies, as well as Eleventh Circuit precedent. The Supreme Court has articulated the elements of deliberate indifference as an objective risk of serious harm and a subjective deliberate

---

[6] Supreme Court precedent does, however, provide a different standard for Eighth Amendment/Fourteenth Amendment mistreatment claims depending upon the factual context of the claim. For example, claims of prisoner/pretrial detainee mistreatment are analyzed under the deliberate indifference standard when they involve the alleged denial of medical care or the alleged failure to respond to a serious risk to inmate health and safety. Farmer, 511 U.S. at 834, 114 S. Ct. at 1977. A higher standard with a more culpable intent requirement is applied when the claim involves allegations of the use of excessive force. Id. ("that officials used force with 'a knowing willingness that harm occur.'").

7

indifference to that risk with a state of mind "more blameworthy than negligence." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977. In Farmer, the Supreme Court affirmed the existence of a subjective intent element in deliberate indifference cases. Id. at 839; 114 S. Ct. at 1980. The Court specifically adopted, as the test for the subjective element, the standard for criminal recklessness contained in Model Penal Code § 2.02(2)(c): to "'consciously disregard a substantial risk of serious harm.'" Id. As the Court explained later in the opinion, "Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

It is significant to note that the Court adopted a standard that, on its face, does not refer to an intent to punish. In a prior section of the opinion, the Court suggested that the very existence of a subjective element in deliberate indifference recognizes that the Eighth Amendment prohibits "cruel and unusual punishments" instead of "cruel and unusual conditions." Id. at 837-838; 114 S. Ct. at 1979. The Court reasoned that having only an objective standard of the existence of a serious risk "unaccompanied by knowledge . . . might well be something society wishes to discourage . . . [b]ut an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. (emphasis added). The addition of the subjective elements of knowledge and reckless disregard, to the Court, "is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases . . . ." Therefore, the conclusion may be drawn that the Court provided for a "knowledge and reckless disregard" requirement to prove "intent to punish" and that, therefore, a showing beyond "knowledge and reckless disregard" need not be made to hold a prison official liable for the infliction of a

8

punishment.

The Eleventh Circuit has stated that if a plaintiff demonstrates the defendant's subjective deliberate indifference to an objectively sufficient risk of serious harm, he has, through that demonstration, shown that the defendant's actions "resulted in the denial of the minimal civilized measure of life's necessities." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Again, it would seem that the proof of the subsidiary elements results in the proof of the whole.

The plaintiff has created genuine issues of material fact about (1) the seriousness of her medical condition and the likelihood that it would be exacerbated by lack of insulin; (2) whether she informed Whatley about her condition and whether Whatley informed Bennett about the existence of the condition and the probable consequences of inaction; and (3) whether Bennet, from the information Whatley provided, was able to draw the inference of the possible existence of a serious medical condition that, unless remedied, would deteriorate. She has thus created genuine issues of fact as to all of the sub-elements of deliberate indifference. If a jailer knows of the serious medical condition of an inmate, knows that by doing nothing it likely will worsen and, after time to reflect on the situation, decides to do nothing more than wait until it actually worsens before acting, an inference could be made that some sort of punitive intent motivated him. The problem with a subjective intent element is that one never really knows what was going through the defendant's mind. It is not likely that a normal defendant will ever deny medical attention to an inmate and then comment within hearing range, "That will teach him to not break the law."

With regard to the qualified immunity issue, the defendant's comparison of his actions to those of the jail nurse in Taylor, to whom the court held that qualified immunity should have

9

been granted, ignores a key difference. In Taylor, the nurse's first encounter with the decedent occurred when he was lying, already unconscious, in the back of the paddywagon. 221 F.3d at 1256. She promptly ordered that he be taken to the hospital. Id. The court found that, with respect to the nurse, the plaintiff had not alleged a constitutional violation because a reasonable jury could not find that the nurse's conduct rose above mere negligence. Id. at 1260. The court emphasized the fact that the nurse had acted "under emergency circumstances demanding an immediate decision . . . ." Id. The defendant in the instant case did not act under the pressure of an emergency situation. Rather, the circumstances upon which this action is based could show that the defendant had, not one, but two chances to order that the plaintiff receive insulin (while on the phone with Whatley and Nichols), not to mention additional time with which to arrive, *sua sponte*, at the conclusion that the plaintiff should be given the prescribed insulin to ensure that she did not fall into a coma.[7]

While the defendant argues that Taylor stands for the broad proposition that "something is not nothing," Taylor's holding actually is much finer. The Eleventh Circuit has acknowledged that "treatment 'so cursory as to amount to no treatment at all'" constitutes deliberate indifference. Id. at 1259 (quoting Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)). The court also stated that "[s]o too does the delay of treatment for obviously serious conditions where 'it is apparent that delay would detrimentally exacerbate the medical problem,' the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." Id. at 1260 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-1189 (11th Cir.

---

[7] Compare with Lancaster, 116 F.3d at 1427, where the court stated, "Furthermore, a jury could find that [the defendant] did not intend for Lancaster to receive treatment until he had a seizure."

1994)).[8]  According to the court, a defendant's actions assume additional significance when

viewed together with the amount of time that was given him to make the challenged decision.

Id. ("These principles were, however, developed in contexts involving much longer time frames

than the incident at issue here, and with those longer time frames, greater periods for reflection

upon a course of action. . . . Determining where to draw the line between the constitutional and

the unconstitutional in a split-second emergency choice between two options of the sort made

here is a distinct task.").  Therefore, depending upon the circumstances of the choice and the

amount of time that the defendant received to make the decision, "something" can still amount to

"nothing."

## CONCLUSION

This court adheres to its decision that issues of genuine material fact preclude an award

of summary judgment, pursuant to the Eleventh Circuit's holdings in Aldridge v. Montgomery,

753 F.2d 970, 972-973 (11th Cir. 1985) (failure to administer physician-prescribed medication to

a prisoner demonstrates deliberate indifference), Ancata v. Prison Health Services, Inc., 769 F.2d

700, 704 (11th Cir. 1985) (necessary medical treatment delayed for non-medical reasons makes

out a case of deliberate indifference), Hill v. DeKalb County Regional Youth Detention Center,

40 F.3d 1176, 1187 (11th Cir. 1994) (finding of deliberate indifference precludes award of

qualified immunity), and Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir.

1997)(case law clearly establishes that official is deliberately indifferent when he intentionally

---

[8] Accord Lancaster, 116 F.3d at 1425: "Thus, if the individual defendants knew that Lancaster had a
serious medical need, then they should have known from the clearly established law that a total failure to obtain
medical treatment for him amounted to deliberate indifference.  In addition, if the individual defendants knew that
Lancaster's medical condition was either life-threatening or urgent and would be significantly exacerbated by
delaying treatment until after the first seizure, then they should have known that their decision to withhold treatment
until he experienced a seizure amounted to deliberate indifference."

11

delays access to medical treatment knowing inmate has urgent medical condition that would be exacerbated by delay).

The opinion in Marsh v. Butler County, 225 F.3d 1243 (11th Cir. 2000), cited by this court in the October 17 Memorandum Opinion, was vacated on December 4, 2000, when the Eleventh Circuit granted an en banc rehearing. Marsh v. Butler County, __ F.3d __, 2000 WL 1772691(11th Cir. 2000). In Marsh, an Eleventh Circuit panel stated that a plaintiff who had properly alleged that the defendant was deliberately indifferent to his serious medical need had, therefore, alleged facts sufficient to overcome the defendant's assertion of qualified immunity. 225 F.3d at 1257. The court stated that "as we noted in Hill, 'a finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.'" Id. (quoting Hill, 40 F.3d at 1187). The vacation of the September 7, 2000 Marsh opinion is another indication of the uncertainty in the area of qualified immunity.

Although the Marsh opinion has been vacated, the part of the opinion that precludes a prison official from asserting qualified immunity if he is found to have been deliberately indifferent to the serious medical needs of an inmate can still be found in Hill, 40 F.3d at 1186 ("'A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.'" (quoting Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir.1992))). Pursuant to Hill, the availability of qualified immunity to a deliberate indifference defendant, as this court noted in its October 17 Memorandum Opinion, involves a question of fact. Because the plaintiff has raised a genuine

12

issue as to whether the defendant was deliberately indifferent, Hill appears to constrain this court from granting qualified immunity.

Even without Hill, there is good reason to believe that "clearly established" authority exists to deny qualified immunity in this case. In Lancaster, the Eleventh Circuit, citing Hill, stated that "the case law had made it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." 116 F.3d 1419, 1425. The court continued, finding that "case law also had clearly established before this case arose that an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay." Id. (citing Hill; Harris v. Coweta County, 21 F.3d 388, 394 (11th Cir. 1994) (sheriff not entitled to qualified immunity where he intentionally delayed treatment that he knew had been prescribed for inmate's serious medical need); Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988) (delaying medical treatment for non-medical reasons constitutes deliberate indifference). The court then concluded that "[t]hus, if the individual defendants knew that Lancaster had a serious medical need, then they should have known from the clearly established law that a total failure to obtain medical treatment for him amounted to deliberate indifference." The facts of Lancaster are similar to the facts of the instant case in that both defendants allegedly "wait[ed] for a manifest emergency before obtaining medical care." Id. at 1426. In Lancaster, the defendants, although they were warned that the detainee would likely begin to have seizures as a result of alcohol withdrawal, waited until the first seizure occurred before taking action. In the instant case, the plaintiff claims that, although the defendant allegedly was warned that she would likely fall into a

13

diabetic coma by morning if she did not receive insulin the night before, he waited until the emergency was manifest before acting.

This court recognizes the apparent circularity of <u>Taylor</u> in holding that deliberate indifference requires subjective intent to punish which may be proved by deliberate indifference. Whether this apparent circularity creates law that is not clearly established is a different question. This court cannot conclude, but for a consideration of the objective language of the sub-tests in <u>Taylor</u>, <u>Farmer</u>, <u>Cottrell</u>, and <u>Estell</u>, that a reasonable jury could find that the defendant actually intended to "punish" the plaintiff. It appears, however, that, pursuant to those cases as well as <u>Hill</u>, the court must allow a jury to consider the totality of the evidence and possibly arrive at such a conclusion.

If it is not too late, the court invites a qualified immunity denial appeal. If there is such an appeal, perhaps the appellate court could advise the parties and this court whether the jury must be instructed that an essential element that the plaintiff must prove is "intent to punish."

This 11th day of December 2000 -

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

14